UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X     Case No.:

SHAUNTAY WATKINS,

                    Plaintiff,                                    **COMPLAINT**

            -against-                                              **PLAINTIFF DEMANDS
                                                                  A TRIAL BY JURY**

THE CITY OF NEW YORK and NEW YORK CITY
TRANSIT AUTHORITY,

                    Defendant.
---------------------------------------------------------------------------X

Plaintiff, SHAUNTAY WATKINS, by her attorneys, PHILLIPS & ASSOCIATES,

ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and

belief, as follows:

## NATURE OF THE CASE

1.     Plaintiff complains pursuant to 42 U.S.C. Section §1981, and the New York City Human

Rights Law, New York City Administrative Code § 8-502(a), *et. seq.*, and seeks damages

to redress the injuries Plaintiff has suffered as a result of being discriminated against and

harassed because of her race and color, and retaliated against by the Defendants due to her

complaints of discrimination and harassment.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.  Supplemental

jurisdiction over Plaintiff's New York State law claims is conferred by 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the occurrences giving

rise to this action took place within the Southern District of New York.

4.     In addition, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that

there is complete diversity of citizenship and the matter in controversy exceeds, exclusive

of interest and costs, the sum of $75,000.00.

## PARTIES

5.  At all times relevant hereto, Plaintiff SHAUNTAY WATKINS ("WATKINS") is a resident of the State of New Jersey and the County of Middlesex.

6.  That at all times relevant hereto, Defendant THE CITY OF NEW YORK ("CITY") is a municipal corporation organized and existing as such under and by the virtue of the laws of the State of New York.

7.  That at all times relevant hereto, Defendant NEW YORK CITY TRANSIT AUTHORITY ("NYCTA") is a department subdivision of Defendant CITY and is a municipal entity duly organized and existing under and by the virtue of the laws of the State of New York.

8.  That at all times relevant hereto, Defendant CITY operated, maintained, controlled and supervised Defendant NYCTA

9.  At all times relevant hereto, Defendant NEW YORK CITY TRANSIT AUTHORITY ("NYCTA") was a domestic government entity duly authorized and existing by virtue of the laws of the State of New York.

10. That at all times relevant hereto, Defendant NYCTA owned and/or operated a number of offices, including one located at 130 Livingston Street, Room 7085, Brooklyn, New York 11201.

11. At all times relevant hereto, Plaintiff was an employee of Defendant CITY AND NYCTA, holding the position of Train Operator.

## MATERIAL FACTS

12. After more than a decade serving in the United States Army, Plaintiff began working with Defendant NYCTA on September 28, 2015 as a Train Operator. In this position, she earned approximately $31.52 an hour.

13.    Soon after beginning her employment, a fellow train operator, Tequisha Jenkins, commenced a pattern of repeated and increasingly offensive discriminatory behavior due to Plaintiff's race and her failure to comply with racial stereotypes.

14.    Jenkins, a darker-skinned black woman targeted Plaintiff solely due to her lighter black skin tone.

15.    **Beginning October 2015, Jenkins made Plaintiff the sole focus of her hatred, stating to fellow coworkers that she thought Plaintiff was "fake," "phony," "oreo[1]" and calling her names like "Rasputia[2]".**

16.    Fellow train operators quickly joined in the harassment, making each class torturous for Plaintiff. Plaintiff was regularly and repeatedly subjected to honking sounds, teeth sucking, threats, and hissing from Jenkins.

17.    **During this time, Jenkins refused to address Plaintiff by name. She would repeatedly call Plaintiff "black girl" or "dirty blonde". Jerkins would also call her an "Oreo," a derogatory term for someone who appears black, but is white in their behaviors and mannerisms.** Jenkins pitted fellow train operators against Plaintiff, telling them that she was "uppity[3]," and that she looked down on them. **Jenkins frequently used a valley girl accent when insulting Plaintiff's accent, calling her a "dumb blonde," and telling her that the way Plaintiff spoke was not "black" enough.**

18.    Plaintiff was regularly ostracized, and excluded from class study groups. She was also not invited to class functions due to Jenkin's successful manipulation of the other class

---

[1] Term for African Americans that the Black community is generally offended with for betraying their roots usually for dating someone White, for dressing, speaking or acting in a manner that is considered "too White" and inconsistent with Black culture. The term is branded OREO since they are "Black on the outside, White on the inside"
[2] A caricature of an unattractive obese African American woman from the film Norbit.
[3] A historically racist word used in reference to African Americans who acts and/or believes they are equal to those who are White.

members.

19.   In or around November 2015, after discussing her situation with family members, Plaintiff decided to not report the discriminatory behavior to Defendant NYCTA. She feared that a report would jeopardize her probationary status. Plaintiff also hoped to take the high road with Jenkins, to not stoop to retaliation but, instead, focus on her studies and be professional in the work environment. Plaintiff passed all of her exams despite this ongoing discriminatory behavior.

20.   In or around December 2015, Plaintiff's class began "Yard Posting" where the class entered the field to train. Plaintiff, predictably, excelled at this, and received glowing reviews from her supervisors.

21.   In or around January 2016, due to Plaintiff's exceptional performance in training, she received a raise to $32.54 per hour.

22.   In or around February 2016, the class moved on to "Road Posting" to learn train operation and station stops. The class was taught by TSS Barnwell and TSS Affleck.

23.   On or around February 21, 2016, Plaintiff and her classmate Earl Hall were assigned the preparation of a train. Hall advised Plaintiff to board the train, charge and dump it. Following instructions, Plaintiff entered the train, inserted the console key, and turned it to the run position. Automatically once the train is activated, the seal beams (headlights) illuminate. Once they did, someone on the trackway started shouting so loudly that Plaintiff heard it within the train: "Why the fuck would you turn on the fucking seal beams when somebody is down here? Makes no fucking sense!" Plaintiff immediately turned off the headlights to find Jenkins and classmate Nathania Scott on the roadbed. Plaintiff apologized profusely, explaining that she was asked to charge and dump the train, but Jenkins refused to listen to her calm explanation. Instead, she boarded the train and charged

Plaintiff, shouting: "What kind of fucking sense does it make for you to turn on the fucking seal beams while someone is on the roadbed? You're so stupid!"

24. **Apologizing, again, Plaintiff asked Jenkins why she continually targeted her, all while Jenkins hurled insults at her. Jenkins screamed that Plaintiff "wasn't shit" and challenged her to a fistfight, saying "So what's up? You light weight. I got goons to handle you. We can handle this right now and I'll tighten up your wig cap. That Army bullshit don't fly around here. I'm gonna fuck you up after work at 3:01AM. I will fuck you up!" Hall and Scott intervened, pushing Jenkins away.**

25. In the commotion, TSS Barnwell and TSS Affleck approached the train. **Plaintiff explained what happened, and detailed Jenkins' long history of discrimination towards Plaintiff.** TSS Barnwell advised Plaintiff to report all of Jenkins' conduct to Defendant NYCTA.

26. Taking his advice, Plaintiff filed a G2 incident report that evening. Plaintiff was never made aware that she was supposed to have union representation present when filing a G2 incident report, which in of itself constituted a violation of her collective bargaining agreement. Jenkins and Hall were also advised to file these incident reports.

27. The next day, Superintendent Young asked Plaintiff to report to the office at 130 Livingstone Plaza in Brooklyn to meet with Superintendent Kim Gibbs and discuss the case.

28. **Plaintiff, along with union representative Ms. Sharon, met with Superintendent Gibbs to detail the months of discrimination and ridiculed she endured for failing to comply with racial stereotypes.**

29. The rest of Plaintiff's class were asked to write G2 incident reports regarding the incident, though Plaintiff was never able to access those documents. According to classmate Nevron

5

Stanislaus, everyone wrote that they did not know or witness anything, even Hall and Scott who witnessed the entire incident.

30.    On or around February 29, 2016, Plaintiff spoke with Stanislaus about Jenkins' harassment. He said that their classmates wanted a clean record, and did not want to get involved. He further explained the continued threats to Plaintiff by Jenkins after they were separated during the night of the incident, but refused to speak to the superiors about everything he witnessed for fear of undermining his probationary status.

31.    On or around March 2, 2016, Plaintiff was taken out of service again, and told to report to the Brooklyn office. After several calls to her union, a representative named Mr. Sullivan explain that both Plaintiff and Jenkins would be terminated.

32.    On or around March 3, 2016, Plaintiff met with Donny Hay, a union representative, Mr. Don, the Senior Director of Operations Training, and Carl Hildner, the Probationary Employee Unit Representative. After authoring another G2 report and offering her sincerest apologies for the incident, Mr. Hay explained that Superintendent Gibbs felt that Plaintiff did not express any remorse for the incident, and she was therefore terminated. When Plaintiff told Mr. Hay that she felt she was being wrongfully terminated, Mr. Hay said that she spoke with "too much pride" and if she really felt threatened, she would have filed a report or gone to the police.

33.    Plaintiff was terminated effective March 4, 2016.

34.    In the wake of her termination, she received a number of threatening and harassing text messages, phone calls, and obscene pictures from unknown phone numbers. She was also made aware that her information was posted to Craigslist soliciting sex. Jenkins had access to all of Plaintiff's personal information through the training class.

35.    Plaintiff filed a restraining order against Jenkins on or around March 14, 2016.

36. Upon information and belief, two Train Operator trainees with less seniority than Plaintiff at the time of termination engaged in a fistfight during class. Despite Defendant's purported "zero tolerance policy" for violence in the workplace, both of these trainees kept their jobs, and were not removed from the training program.

37. From April 1 to April 8, 2016, Plaintiff was receiving phone calls and text messages from unknown numbers. These text messages identified Plaintiff's address and asked, "are you a hooker or nah?" Plaintiff followed up with the police about these calls and texts in the hopes that something could be done. Plaintiff was advised that the police submitted subpoena requests under "Cyber Harassment and Defamation", to the NJ prosecutor's office for reconsideration. Upon information and belief, these attempts to contact Plaintiff are from Jenkins.

38. The above are just some of the acts of discrimination, harassment, and retaliation that Plaintiff experienced while working for the Defendants.

39. Defendant treated Plaintiff differently because of her race, her refusal to comply to racial stereotypes and her complaints of this discrimination.

40. Plaintiff's job performance was excellent during the course of her employment with the Defendants.

41. The Plaintiff has been unlawfully discriminated against, humiliated, retaliated against, has been degraded and, as a result, suffers loss of rights, emotional distress, loss of income and earnings.

42. Defendants' actions and conduct have been intentional and were intended to harm Plaintiff.

43. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, embarrassed, victimized, and emotionally distressed.

44. Defendants' hostile actions created an unlawful hostile working environment, which no

reasonable person should have to tolerate.

45.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will

continue to suffer the loss of income, the loss of commissions and other compensation, and

Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience,

loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced and is

continuing to experience severe emotional and physical distress.

46.    As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction

of the Court.

47.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law. As such, Plaintiff demands punitive damages as against all the

Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER 42 U.S.C. Section 1981

48.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were

more fully set forth herein at length.

49.    42 U.S.C. § 1981 states in relevant part as follows:

    (a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence, and to the full and
> equal benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and to no other.

    (b) "Make and enforce contracts" defined

> For purposes of this section, the term "make and enforce contracts"
> includes the making, performance, modification, and termination
> of contracts, and the enjoyment of all benefits, privileges, terms,
> and conditions of the contractual relationship.

8

50.   The Defendants discriminated against the Plaintiff because of her race as provided under 42 U.S.C. § 1981 and Plaintiff has suffered damages as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

51.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52.   The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

53.   Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her race (black).

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

54.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

55.   The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

56.   Defendant engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

57.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

59.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

60.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61.    The New York City Administrative Code §8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

62.    Defendants violated the section cited herein.

## INJURY AND DAMAGES

63.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will

continue to suffer loss of income, commissions, bonuses and other compensation as well as future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

64.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. Section 1981, and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.,* by discriminating against Plaintiff on the basis of her race and then unlawfully harassing her and terminating her employment in retaliation for complaining about said discrimination;

B. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful employment practices and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      June 3, 2016

**PHILLIPS & ASSOCIATES**
**ATTORNEYS AT LAW, PLLC**

_____
Marjorie Mesidor
Brittany A. Stevens
45 Broadway, Suite 620
New York, NY 10006
(212) 248-7431
mmesidor@tpglaws.com
bstevens@tpglaws.com