USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAUNTAY WATKINS,
                              Plaintiff,

        -against-

NEW YORK CITY TRANSIT AUTHORITY,
                              Defendant.
------------------------------------------------------------X

16 Civ. 4161 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Shauntay Watkins sues the New York City Transit Authority ("NYCTA" or "Defendant") alleging a hostile work environment and retaliation under 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107, et seq. Defendant moves for summary judgment and sanctions under Federal Rules of Civil Procedure 56 and 37(e), respectively.[1] Defendant's motion for summary judgment is granted in part and denied in part. Defendant's motion for sanctions is denied without prejudice to renewal before trial.

I. **BACKGROUND**

    The facts below are drawn from the parties' Rule 56.1 Statements and other submissions on this motion and are construed in favor of Plaintiff as the non-moving party. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). The facts are undisputed except as noted.

---

[1] Plaintiff voluntarily withdrew her claim under § 8-107(19) on January 31, 2018.

**A. Factual Background**

On or about September 28, 2015, Defendant hired Plaintiff as a probationary train operator. Probationary train operators are required to complete a one-year period of probation. Plaintiff attended an employee orientation, received the Employee Orientation Handbook (the "Handbook") and read it. The Handbook contains information about the NYCTA's Office of Equal Employment Opportunity (the "EEO") and Special Investigations Review Unit (the "SIR"), including their respective functions and contact information. Plaintiff does not recall anyone discussing the EEO at her Orientation, but Senior Director of Operations Training, Kim Gibbs -- a member of the NYCTA probationary committee -- testified that she emphasized the importance of maintaining a respectful workplace, and informed Plaintiff and her fellow employees that her door was open if an employee had any problems or complaints.

Tequisha Jenkins, Plaintiff's co-worker, began making discriminatory remarks to and about Plaintiff in or around October 2015. During the next five months of Plaintiff's employment, Jenkins, a "dark-skinned black female of African American decent," described Plaintiff, "a light-skinned black female of Caribbean decent," to their co-workers as "fake," "phony," "Oreo" and "Rasputia." Jenkins also called Plaintiff "black girl," "dirty blonde," "uppity" and "dumb blonde." Jenkins mocked Plaintiff for having a "valley girl" accent and not speaking "black enough." Jenkins made honking and teeth sucking sounds "regularly" and excluded Plaintiff from a study group.

On three occasions, Jenkins made alleged discriminatory remarks about Plaintiff in front of Defendant's instructors -- one in October 2015, when Jenkins said about Plaintiff in Instructor Albanese's classroom, "dirty blond hair girl here we go"; a second in October 2015, when Plaintiff asked a question of Instructor McCain, and Jenkins said "this oreo has this question

again"; and a third in October/November 2015, where Jenkins called Plaintiff "Rasputia" in front of Instructor Albanese.

On or about February 21, 2016, Plaintiff and Jenkins were involved in a verbal altercation (the "incident"). According to Plaintiff's written incident report or "G2," Plaintiff turned on a train's headlights or "seal beams" and heard Jenkins yell from the tracks: "People are out here, makes no common sense to turn on the seal beams while [we're] out here." Plaintiff told Jenkins that "[she] did not see her out there[, and] it wasn't done deliberately or intentionally." Plaintiff and Jenkins "continued to yell at each other," and then "crew members got in between [them]." Jenkins' G2 stated that Plaintiff "became very threatening and irate, saying it wasn't that serious" and that Jenkins "feared being struck by [the] charging train."

Plaintiff reported Jenkins' harassment to a supervisor, TSS Barnwell, immediately after the incident, and later to Gibbs. Gibbs conducted an investigation, which involved interviewing and obtaining G2 statements from Plaintiff, Jenkins and other witnesses to the incident. In her G2 statement, dated February 21, 2016, the day of the incident, Plaintiff stated: "This is not the first time I have been antagon[ized] by T/O Jenkins over the past 5 month[s] . . . . I have been subjected to harassment, disrespectful comments, and condescending remarks from Jenkins." None of the witnesses to the incident acknowledged any previous confrontations or problems between Plaintiff and Jenkins.

Plaintiff told Gibbs during the interview about Jenkins' discriminatory remarks and "how Jenkins would call [her] black girl with dirty blonde hair, [and] constantly mocked [her] with a valley girl accent [and] called [her] an Oreo." Gibbs testified at her deposition that, although Plaintiff explained that she had a difficult relationship with Jenkins, Plaintiff mainly commented on what she believed to be the differences between African American and Caribbean women;

"[Plaintiff] thought that since Ms. Jenkins was African American, not of Caribbean descent, that African American women just didn't stick together the way the Caribbean culture did." Gibbs further testified that Plaintiff accused Jenkins of using a racial slur, but Gibbs could not remember whether it was "Oreo cookie." Gibbs testified that she did not question Jenkins about Plaintiff's allegations of harassment because she (Gibbs) "was really focused on the[] altercation." Plaintiff admitted at her deposition that she did not report Jenkins' conduct until February 21, 2016, more than four months after it began.

Based on Plaintiff's and Jenkins' misconduct and other witness accounts, Defendant determined that both Plaintiff and Jenkins had violated Rules 10(c) and 10(d) of the NYCTA's Rules and Regulations, which state in part, "employees must treat all . . . their fellow employees with courtesy, avoid argument, and exercise patience" and "employees must not use loud, uncivil, indecent or profane language even under the greatest provocation." Plaintiff and Jenkins also were found to be in violation of the NYCTA's policies regarding maintaining a respectful workplace and violence in the workplace.

Defendant terminated both Plaintiff's and Jenkins' employment on February 25, 2016. Plaintiff's termination letter, dated March 1, 2016, stated that the reason for her termination was "an unsatisfactory probationary period." Gibbs testified at her deposition that the NYCTA has a "zero-tolerance" policy for physical and verbal altercations and agreed that an employee ordinarily would be terminated for engaging in a physical or verbal altercation, regardless of the reason for the altercation.

In a written statement dated March 3, 2016, Plaintiff apologized for her role in the incident with Jenkins. Plaintiff also said, "I have not been in this type of bullying situation,

4

therefore, did not know how to respond. These bullying incidents have been occurring for over 5 months, and I regret not reporting them."

On June 3, 2016, Plaintiff commenced this action. The Complaint alleges that, under federal and local law, Jenkins' harassment created a hostile work environment for which Defendant is liable and that Defendant's firing Plaintiff was retaliatory.

### B. Plaintiff's Text Messages

After she had been fired, but before filing the Complaint in this action, Plaintiff took screen shots of some of her text messages and uploaded them to her computer. Shortly thereafter, on May 29, 2016, Plaintiff traded in her cell phone to Sprint, despite being aware of her duty to preserve her cell phone.

Plaintiff was asked to produce all text messages relating to her Complaint, as part of discovery pursuant to Federal Rule of Civil Procedure 26. On October 25, 2016, Plaintiff produced text messages related to the incident and her being fired, some of which were incomplete -- portions were cut off or blacked out. Plaintiff asserts that she produced all of the text messages in her possession related to the Complaint, but does not dispute that she did not produce the missing portions.

## II. LEGAL STANDARD

Summary judgement is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc.*, 875 F.3d at 113 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed.

R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *id*. Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *See Nick's Garage, Inc.*, 875 F.3d at 113. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Saleem v. Corp. Trans. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

## III. DISCUSSION

### A. Hostile Work Environment

Plaintiff asserts that Defendant subjected her to unlawful discrimination and harassment in violation of 42 U.S.C. § 1981 and the NYCHRL because she "faced almost daily rants from Ms. Jenkins, while fellow classmates and instructors stood by and did nothing."

#### 1. Legal Standard

##### a. Federal Law -- Hostile Workplace Conditions

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (internal quotation marks omitted). To defeat a summary judgment motion on a hostile work environment claim, a plaintiff must establish that: (1) "the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) there is "a specific basis . . . for imputing" the objectionable conduct to Plaintiff's employer. *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015); *accord Charley v. Total Office Planning Servs., Inc.*, 202 F. Supp. 3d 424, 438–29 (S.D.N.Y. 2016).

Under the first prong, which has both objective and subjective components, "[t]he conduct complained of must be severe or pervasive enough that a reasonable person would find

it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Wiercinski*, 787 F.3d at 113. Courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks omitted). A plaintiff alleging a hostile work environment must establish "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotations omitted); *accord La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210 (2d Cir. 2010) (summary order) ("Ordinarily, a race-based hostile work environment claim must involve more than a few isolated incidents of racial enmity.") (citations omitted).

### b. Federal Law -- Imputing Conduct to Plaintiff's Employer

Under the second prong, "[a]n employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or his non-supervisory co-workers."[2] *Wiercinski*, 787 F.3d at 113. Where, as in this case, "the harassment is perpetrated by the plaintiff's non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have

---

[2] For purposes of federal anti-discrimination law a "supervisor" is someone authorized "to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2242 (2013).

7

known) about the harassment but failed to take appropriate remedial action." *Id.* (internal quotation marks omitted). The test is whether (1) the employer "failed to provide a reasonable avenue for complaint," or (2) "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009); *accord Summa v. Hofstra Univ.*, 708. F.3d 115 (2d Cir. 2013).

Regarding the second prong, to determine whether the employer "knew or should have known" based on an employee's knowledge, courts consider whether:

> a) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or b) the official is charged with a duty to act on the knowledge and stop the harassment, or c) the official is charged with a duty to inform the company of the harassment. For non-supervisory co-workers who lack authority to counsel, investigate, suspend, or fire the accused harasser . . . the co-worker's inaction does not spark employer liability *unless that co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions*.

*Duch*, 588 F.3d at 762 (internal citations, quotation marks and alterations omitted; emphasis in original).

### c. The NYCHRL -- Hostile Workplace Conditions

"The NYCHRL . . . applies a more lenient standard than [federal law] to discrimination and hostile work environment claims." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017). Claims are construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). A plaintiff must show that she "was treated 'less well' because of her [membership in a protected class]." *Id.* at 111 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 36 (1st Dep't 2009)); *accord Pena-Barrero v. City of New York*, No. 14 Civ. 9550, 2017 WL 1194477, at *16 (S.D.N.Y. Mar. 30, 2017) ("Under the [NY]CHRL's more liberal standard, a plaintiff must show that her employer treated her less well than other similarly

situated employees, at least in part for discriminatory reasons." (internal quotation marks and citations omitted and alterations in original)). An "employer may prevail on summary judgment if it shows that a reasonable jury could conclude only that the conduct amounted to no more than a petty slight." *Williams*, 872 N.Y.S.2d at 111.

### d. The NYCHRL -- Imputing Conduct to Plaintiff's Employer

The NYCHRL adopts a more rigorous standard than federal law to impute liability to an employer. *See, e.g.*, *Swiderski v. Urban Outfitters, Inc.*, No. 14 Civ. 6307, 2017 WL 6502221, at *7 (S.D.N.Y. Dec. 18, 2017); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) (collecting cases). An employer will be held liable under the NYCHRL for the discriminatory acts of non-supervisory co-workers only if:

> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where the conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>
> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8-107(13)(b); *see also Swiderski*, 2017 WL 6502221, at * 7.

### 2. Plaintiff's Hostile Work Environment Claim Under Federal Law

#### a. Jenkins' Conduct

A reasonable factfinder could conclude, based on the totality of the circumstances, that Jenkins' comments were sufficiently severe or pervasive to create an abusive work environment under federal law. The evidence shows that from approximately October 2015 to February 2016, Jenkins, a "dark-skinned black female of African American decent," made harassing and racially-charged comments directed at Plaintiff, "a light-skinned black female of Caribbean

decent,'" about her skin color and failure to conform to racial stereotypes. Plaintiff testified that Jenkins described Plaintiff to co-workers as "fake," "phony," "Oreo" and "Rasputia"; called Plaintiff "Black girl," "dirty blond," "uppity" and "dumb blonde"; mocked Plaintiff by speaking in a "valley girl" accent; and made honking and teeth sucking sounds. Plaintiff testified that those harassing comments "are the nature of the things that [went] on for months." Plaintiff further testified that Jenkins' harassment was offensive and caused Plaintiff to suffer "mental anguish, exhaustion, trauma, [and] anxiety." Based on the totality of the circumstances, a reasonable factfinder could find these comments, which were made in the presence of Plaintiff's classmates and instructors, sufficiently pervasive, humiliating and offensive as to create an objectively and subjectively hostile work environment. *See Rivera v. Rochester Genesee Reg'l Trans. Auth.*, 743 F.3d 11, 21 (2d Cir. 2014) (holding that a reasonable jury could find that an abusive work environment existed where the plaintiff's co-workers called plaintiff a racial slur "probably like three times" and chanted another racial slur "about five" times).

### b. Imputing Jenkins' Conduct to NYCTA Under Federal Law

To impute Jenkins' -- a non-supervisory employee's -- conduct to Defendant for purposes of liability, Plaintiff must adduce evidence that Defendant failed to provide a reasonable avenue for complaint, or that it knew or should have known about Jenkins' conduct but failed to act. *Duch*, 588 F.3d at 762. Here, although the record contains undisputed evidence of a reasonable avenue for complaint, the record also contains evidence from which a reasonable jury could conclude that Defendant knew or should have known about Jenkins' harassment but failed to take appropriate remedial action.

Plaintiff asserts that Defendant had actual or constructive knowledge of Jenkins' discriminatory conduct because Plaintiff's instructors heard and/or witnessed Jenkins' engaging

10

in that conduct. A reasonable jury could attribute the instructors' knowledge to Defendant because of evidence that they had a "strong de facto duty to act as a conduit to management for complaints about work conditions." *Id.* Gibbs testified that instructors have a duty and responsibility to maintain control in the classroom and report classroom misconduct. In the event of an incident, instructors were required "to write . . . a G2," and "to tell [the training department] if something happens in the classroom." Despite this duty to report, none of Plaintiff's instructors reported Jenkins' harassing conduct or attempted to remedy the situation. Summary judgment on Plaintiff's § 1981 claim therefore is denied.

### 3. Plaintiff's Hostile Work Environment Claim Under the NYCHRL

Summary judgment is denied as to the NYCHRL claim. Because Plaintiff has presented evidence from which a reasonable factfinder could conclude that Jenkins' conduct was severe and pervasive, she necessarily has presented sufficient evidence to meet the NYCHRL's more liberal standard for establishing an actionable work environment.

Although Plaintiff did not adduce evidence or argue that the instructors who observed Jenkins' conduct exercised managerial or supervisory responsibility, she did adduce evidence that the instructors knew or should have known about Jenkins' harassment and should have, but did not, report such misconduct to management. Based on this evidence, a reasonable jury could find that NYCTA should have known of Jenkins' conduct and failed to exercise reasonable diligence to prevent it. *See* N.Y.C. Admin. Code § 8-107(13)(b)(3).

### B. Aiding and Abetting under the NYCHRL

Defendant also moves for summary judgment on the Complaint's claim of aiding and abetting under the NYCHRL. N.Y.C. Admin. Code § 8-107(6). Section 8-107(6) states: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce

the doing of any of the acts forbidden under this chapter, or to attempt to do so." In contrast to § 8-107(1), which creates direct liability against an employer that engages in racially discriminatory conduct, § 8-107(6) creates liability against an individual employee who did not participate in the primary violation, but assisted or attempted to assist the individual or individuals participating in the primary violation. *See Ananiadis v. Mediterranean Gyros Prod., Inc.*, 54 N.Y.S.3d 155, 158 (2d Dep't 2017); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015) ("[B]efore an individual may be considered an aider and abettor, liability must first be established as to the employer.") (internal quotation marks omitted). "An individual who 'actually participates' in the discrimination is liable as an aider and abettor." *Fatcheric v. Bartech Grp.*, No. 15 Civ. 9702, 2017 WL 3084418, at *6 (S.D.N.Y. July 19, 2017) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)).

Plaintiff asserts that the NYCTA aided and abetted Jenkins' discriminatory conduct because Plaintiff's instructors failed to report it, and Gibbs failed to investigate it. Summary judgment is granted on this claim because § 8-107(6) creates a cause of action against an individual defendant (*e.g.*, an employee) for aiding and abetting an employer's violation under the NYCHRL. *See, e.g.*, *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349 (S.D.N.Y. Aug. 16, 2012) (noting that summary judgment would be appropriate against the plaintiff's employer because "there can be no aider-and-abettor liability as to the Corporate Defendants for aiding and abetting their own conduct"); *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011), *aff'd*, 506 F. App'x 47 (2d Cir. 2012) (summary order) (noting that the "NYCHRL require[s] that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor").

### C. Retaliation

Plaintiff also brings claims for unlawful retaliation in violation of § 1981 and the NYCHRL. Summary judgment is granted because Plaintiff has not proffered evidence that Defendant fired her for reporting Jenkins' harassing conduct.

#### 1. Legal Standard

Retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting analysis. *Fincher v. Depository Trust & Cleaning Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under Title VII, are evaluated using a three-step burden-shifting analysis"); *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) ("Courts apply the same standard used in Title VII cases in analyzing . . . claims under the NYCHRL" except that "there is no requirement that the employee suffer a materially adverse action" under the NYCHRL) (citation and internal quotation marks omitted).

To make out a prima facie case of retaliation under federal law, a plaintiff must show that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa*, 708 F.3d at 125 (citation and internal quotation marks omitted). Once a prima facie case is established, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Fincher*, 604 F.3d at 720. If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to show that, "but for" the protected activity, she would not have been terminated. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Under the NYCHRL, a plaintiff need not prove any "adverse employment action" or but for causation, but instead that something occurred that would be "reasonably likely to deter a person from engaging in protected activity." *Fincher*, 604 F.3d at 723 (citation and internal quotation marks omitted). The NYCHRL analysis should "be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." *Mihalik*, 715 F.3d at 112 (quoting *Williams*, 872 N.Y.S.2d at 34).

### 1. Prima Facie Case

Plaintiff has proffered sufficient evidence to make out a prima facie case of retaliation. First, Plaintiff has submitted evidence that she engaged in a protected activity of which Defendant was aware. Plaintiff reported Jenkins' harassment to supervisor TSS Barnwell immediately after the incident, and later to Gibbs. Plaintiff testified that she "explained to [Gibbs] that [she] ha[s] been enduring this type of harassment, . . . about the discriminatory remarks, . . . how Jenkins would call [her] black girl with dirty blonde hair, . . . constantly mocked [her] with a valley girl accent." Gibbs likewise testified that Plaintiff told her (Gibbs) that Jenkins had been harassing her (Plaintiff) because "Ms. Jenkins is darker so [Plaintiff] just felt that Ms. Jenkins was jealous of [Plaintiff] because of those things." Gibbs further testified that Plaintiff said Jenkins' had called Plaintiff an "Oreo," which Gibbs understood to mean that Plaintiff "was acting white." Because Plaintiff complained directly to her employer, the first and second elements of a prima facie case are met. *See Raniola v. Bratton*, 243 F.3d 610, 624–25 (2d Cir. 2001).

Plaintiff has satisfied the third element of a prima facie case because her being fired constitutes "a materially adverse change in the terms and conditions of employment." *Galabya*

14

*v. N.Y.C. Bd. of Ed.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted); *accord Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (describing a "materially adverse" action as one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

Lastly, Plaintiff has presented evidence from which a reasonable jury could conclude that there was a causal connection between her complaints and being fired. It is well established in the Second Circuit that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation marks omitted). Here, Plaintiff was fired less than one week after reporting Jenkins' harassment to Defendant, which is sufficient to create an inference of retaliation. *See Hubbard v. Total Commc'ns, Inc.*, F. App'x 679, 681 (2d Cir. 2009) (summary order) (holding that a gap of four months could support a finding of causation).

### 2. Defendant's Legitimate, Non-Retaliatory Explanation

Having made out a prima facie case of retaliation, the burden shifts to Defendant to put forward a legitimate, non-retaliatory reason for Plaintiff's being fired. Defendant has adduced evidence that Plaintiff was fired because Plaintiff and Jenkins engaged in a verbal altercation in violation of Defendant's Rules and Regulations. Gibbs, a member of the NYCTA's probationary committee, testified that, with respect to probationary employees, any violation of the Rules and Regulations is a fireable offense. Gibbs further testified that violations of the Rules and Regulations "are all enforced with the same level of strictness and consistency." Lastly, Gibbs testified that her investigation after the incident and learning about Plaintiff's and Jenkins' acrimonious relationship was narrowly focused on the women's verbal altercation, and that the

15

verbal altercation ultimately was the reason that Plaintiff was fired.  The record also includes Plaintiff's notice of termination, which cites the relevant provisions of the NYCTA's Rules and Regulations as the basis for Defendant's decision.  Jenkins was fired on the same day as Plaintiff based on her involvement in the altercation with Plaintiff.  As Defendant has proffered evidence of a legitimate, non-retaliatory reason for firing Plaintiff, the burden shifts back to Plaintiff to present evidence that she would not have been fired but for her complaints about Jenkins' harassment.

### 3. Pretext

Plaintiff has not proffered evidence that the reason for her termination was pretextual.  First, "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under [federal law], but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (affirming summary judgment where the appellant "produced no evidence other than temporal proximity in support of his charge that the proffered reason for his discharge was pretextual").  Second, Plaintiff's assertion that two other black, train female train operators -- whom she could not name -- were involved in an altercation and were not fired is insufficient to create a triable issue of material fact.  Plaintiff did not identify the two women, state when the altercation occurred, or how she became aware of it.  Gibbs did not corroborate Plaintiff's testimony.

The evidence in the record supports, rather than undermines, Defendant's asserted non-retaliatory reason for firing Plaintiff.  Plaintiff admits that she engaged in a verbal altercation, which is a fireable offense; that Plaintiff and Jenkins both were fired for their involvement in the altercation; and that Plaintiff did not complain about Jenkins until after the verbal altercation had

already occurred.  Plaintiff also has not proffered any evidence that Gibbs or anyone else who may have been involved in the decision to fire her acted with discriminatory animus.  Plaintiff argues that Defendant's failure to investigate her discrimination complaint suggests that she was terminated in retaliation for making those complaints.  To the contrary, the portions of Gibbs' testimony on which Plaintiff relies suggest that Gibbs was singularly focused on investigating the verbal altercation, the conduct for which Plaintiff and Jenkins ultimately were fired.

Nor has Plaintiff proffered any evidence of "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reason for its action."  *Zann Kwan v. Andalex Grp.*, 737 F.3d 834, 846 (2d Cir. 2013).  Rather, Plaintiff testified that after the altercation, she was told that there would be an investigation and that she could be terminated if the investigation did not "go[] well in [Plaintiff's] favor."  Because Plaintiff has not presented any evidence that her being fired "reflected anything other than her employer's enforcement of its preexisting disciplinary policies in a reasonable manner," summary judgment on the retaliation claim is granted.  *See Caruso v. Bon Secours Charity Health Sys., Inc.*, 703 F. App'x 31, 34–35 (2d Cir. 2017) (summary order) (internal quotation marks and alterations omitted) (affirming summary judgment where the plaintiff and a co-worker engaged in a physical altercation that violated the defendant's standards of conduct and the defendant fired the plaintiff shortly thereafter).

Even under the NYCHRL's more liberal standard, summary judgment is appropriate.  Plaintiff has not proffered evidence, other than temporal proximity, to suggest that Defendant's legitimate, non-retaliatory reason for firing Plaintiff was false.  *See Aiossa v. Bank of Am., N.A.*, 2012 WL 4344183, at *5 (E.D.N.Y. Sept. 21, 2012) (noting that under the NYCHRL "temporal proximity [between Plaintiff's complaint and Defendant's adverse action], without more, is

17

insufficient to show pretext"), *aff'd*, 538 F. App'x 8, 10 (2d Cir. 2013) (summary order) (affirming grant of summary judgment as to retaliation claim under the NYCHRL because "Appellant fail[ed] to present probative facts beyond some measure of temporal proximity," and "substantial evidence supported Appellees' contention that legitimate, non-retaliatory reasons motivated their decision"). Plaintiff also has failed to proffer evidence that her being fired would be reasonably likely to deter a person from engaging in protected activity, especially given that Plaintiff did not engage in any protected activity until after the altercation had already occurred. Summary judgment therefore is granted on the NYCHRL claim as well.

### D. Sanctions Under Federal Rule of Civil Procedure 37(e)

Defendant seeks dismissal of the case or, in the alternative, an adverse inference against Plaintiff based on her alleged spoliation of evidence. Specifically, Defendant asserts that the text messages that Plaintiff produced during discovery were cut off or obscured by black boxes, and Plaintiff traded-in her cell phone to Sprint even though she was aware of her duty to preserve it. The motion for spoliation sanctions is denied without prejudice to renewal as a motion in limine.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008). Under Federal Rule of Civil Procedure 37(e):

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)  only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

18

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1)–(2). "The choice of an appropriate remedy for spoliation is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Rhoda v. Rhoda*, No. 14 Civ. 6740, 2017 WL 4712419, at *1 (S.D.N.Y. Oct. 3, 2017) (internal quotation marks omitted).

The moving party "has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *McIntosh v. United States*, No. 14 Civ. 7889, 2016 WL 1274585, at *33 (S.D.N.Y. Mar. 31, 2016) (quoting *Dilworth v. Goldberg*, 03 F. Supp. 3d 198, 200 (S.D.N.Y. 2014). "The Advisory Committee Notes on section (e)(2) of the new Rule make clear that the new Rule 37 rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of mere negligence." *Rhoda*, 2017 WL 4712419, at *2 (internal quotation marks and alterations omitted). "[L]itigants in the Second Circuit seeking [sanctions under Rule 37(e)(2)] now have the burden of proving 'intent to deprive,' rather than ordinary or gross negligence." *Id.* (citing Fed. R. Civ. P. 37(e)(2)).

Plaintiff concedes that she had an obligation to preserve her cell phone and failed to do so. Defendant's motion nevertheless is denied because Defendant has not established either that the electronically stored information that it seeks could not be restored or replaced through additional discovery, or that Plaintiff acted with a culpable state of mind. First, Defendant could have questioned and/or requested production from its own employees or sought to subpoena Plaintiff's cell phone records. *See Best Payphones, Inc. v. City of New York*, No. 01 Civ. 3924,

2016 WL 792396, at *5 (E.D.N.Y. Feb. 26, 2016) ("Plaintiff also rightly argues that many of the documents . . . could have been requested from third parties, but were not . . . . Defendants cannot properly complain that the documents . . . are not available when Defendants have not shown that they sought [them] from non-parties.").

Second, Defendant has not proffered any evidence that Plaintiff acted with the requisite intent to deprive Defendant of relevant evidence, rather than negligence. Plaintiff represents that she produced all of the text messages in her possession and saved them to a computer before trading in her cell phone and that her failure to preserve her cell phone was an inadvertent mistake. Plaintiff has not offered any explanation as to why the text messages that she produced were incomplete or redacted. Defendant's motion for spoliation sanctions is denied without prejudice to Defendant's renewal on a pre-trial motion in limine, specifically addressing the requirements of Rule 37(e).

## IV. CONCLUSION

Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion for sanctions against Plaintiff is DENIED without prejudice to renewal before trial. Plaintiff's motion for oral argument is DENIED as moot. The Clerk of Court is directed to close the motion at Docket No. 31.

Dated: February 13, 2018
      New York, New York

                                      LORNA G. SCHOFIELD
                              UNITED STATES DISTRICT JUDGE