19-286-cv
*Watkins v. N.Y.C. Transit Auth.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of May, two thousand twenty-one.

PRESENT:   JOHN M. WALKER, JR.,
　　　　　　PIERRE N. LEVAL,
　　　　　　DENNY CHIN,
　　　　　　　　　*Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jun 15 2021
```

SHAUNTAY WATKINS,
　　　　　　　*Plaintiff-Appellant,*

　　　　　　-v-　　　　　　　　　　　　　　　　　　　　　　　19-286-cv

NEW YORK CITY TRANSIT AUTHORITY,
　　　　　　　*Defendant-Appellee.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:　　　　STEPHEN BERGSTEIN, Bergstein & Ullrich LLP, New Paltz, New York.

---

　　\*　　The Clerk of Court is respectfully directed to amend the caption as set forth above.

| | |
|---|---|
| FOR DEFENDANT-APPELLEE: | BETH L. KAUFMAN, Schoeman Updike Kaufman & Gerber LLP, New York, New York. |

Appeal from the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Shauntay Watkins appeals from a judgment of the district court entered January 30, 2019, following a jury trial, dismissing her hostile work environment claim brought under 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL") against defendant-appellee New York City Transit Authority (the "Transit Authority").[1] By opinion and order entered April 16, 2020, the district court denied Watkins's motion for a new trial after the jury's adverse verdict. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On September 28, 2015, Watkins, a Caribbean-American Black woman, began training as a train operator for the Transit Authority. Watkins testified that during her training her co-worker, Tequisha Jenkins, also a Black woman, repeatedly made racially-derogatory comments to Watkins suggesting inferentially that she was

---

[1] Although Watkins named the City of New York as a defendant when she brought this action, she voluntarily dismissed those claims below.

2

not "black enough."  Joint App'x at 110.  Watkins testified that Jenkins (1) called her "a black girl with dirty blond hair," an "Oreo," and "Rasputia,"[2] (2) "ma[de] honking noises insinuating that [Watkins] did not speak black," and (3) "mock[ed] [Watkins's] dialect in a valley girl accent when [Watkins] did answer questions."  Joint App'x at 114, 127.  Watkins further testified that the Transit Authority's training instructors failed to intervene despite being present in the classroom during Jenkins's harassment and use of racial slurs.

Months later, on February 21, 2016, Watkins and Jenkins took part in a training exercise on starting a train.  Watkins boarded the first train car and turned on the high beam headlights.  Jenkins, who was on the tracks in front of the train, became upset at Watkins for turning on the headlights, which caused Jenkins to fear that the train would start to move. Jenkins aimed "a lot of profanity and a lot of derogative comments" at Watkins, calling her "[f]'ing stupid" and threatening her, saying, "I'll 'F' you up," called Watkins "fake" and "phony," and said she had "goons to handle [Watkins]."  *Id.* at 159-60.  But none of Jenkins's words revealed any racial basis for her hostility. Watkins filed an incident report with the Transit Authority describing the altercation without mentioning any race-based motivation for Jenkins's conduct.

---

[2] The district court noted that "Oreo" references the chocolate cookie with white filling to disparage "a black person who adopts the characteristic mentality and behavior of white middle-class society" and that "Rasputia" refers to a film character who embodies the stereotypical "mammy" Black woman trope.  Special App'x at 2 nn.2-3.

3

Watkins also testified that, after the incident, she told Transit Authority supervisory personnel that Jenkins had subjected her to racially discriminatory harassment throughout their training period. Watkins and Jenkins were then both terminated for violating the Transit Authority's rule prohibiting workplace altercations.

Watkins brought these claims against the Transit Authority for maintaining a hostile work environment and for retaliation under 42 U.S.C. § 1981 and the NYCHRL. The district court (Schofield, *J*.) denied the Transit Authority's summary judgment motion with respect to the hostile work environment claims but granted summary judgment on retaliation and all other claims.[3]

Pre-trial, the Transit Authority moved to preclude evidence of Watkins's termination as irrelevant to her remaining hostile work environment claim. The district court (Ramos, *J*.) allowed Watkins to testify about the February 21 incident and her termination but limited her testimony to explaining that she had been involved in an altercation with Jenkins and was subsequently fired. Accordingly, over the Transit Authority's repeated objections, the district court permitted Watkins to testify about Jenkins's February 21 threats and profanities directed at Watkins, the incident report that Watkins submitted to the Transit Authority (which included no mention of race-based hostility), Watkins's conversations subsequent to the February 21 incident with

---

[3] On appeal, Watkins does not challenge the dismissal of her retaliation and other claims, and thus we consider only the dismissal of her hostile environment claims.

4

Transit Authority supervisors regarding Jenkins's months-long harassment preceding the February 21 incident, and Watkins's eventual termination.  At the close of trial, the Transit Authority proposed a special jury instruction to direct jurors not to consider the February 21 incident and the Transit Authority's subsequent investigation when assessing the hostile work environment claim.  Watkins objected to the limiting instruction, arguing that this evidence should be considered as part of the totality of circumstances relevant to the hostile work environment claim.  Ultimately, the district court instructed the jury, in deciding whether Watkins had proven her hostile environment claims, not to consider: (1) the February 21, 2016 incident between Watkins and Jenkins, (2) the Transit Authority's investigation of the incident, and (3) the termination of Watkins's employment.  The jury returned a verdict finding that Watkins failed to prove that she suffered a hostile work environment under federal or city law.

On March 11, 2019, Watkins moved for a new trial on the basis that the district court improperly prevented the jury from considering the February 21 incident.  As noted, the district court denied the motion by opinion and order entered April 16, 2020.  This appeal followed.

"We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion."  *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018).  "We view the evidence in the light most favorable to the nonmoving party, and we will reverse a judgment only if the district court (1) based its decision on an error of law, (2) made a clearly erroneous

5

factual finding, or (3) otherwise rendered a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

"[A]n erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected." *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017) (internal quotation mark and citation omitted). "Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case." *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (internal quotation marks and citation omitted). "A jury instruction is erroneous if the instruction misleads the jury as to the proper legal standard, or it does not adequately inform the jury of the law, but such an error will not be grounds for reversal unless taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998) (internal quotation marks and citation omitted). We review the district court's jury instructions *de novo* and will reverse the district court's decision "only if the appellant shows that the error was prejudicial in light of the charge as a whole." *Japan Airlines Co. v. Port Auth. of New York & New Jersey*, 178 F.3d 103, 110 (2d Cir. 1999).

"A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and [2] that a specific basis

6

exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted). An employer is not responsible for hostility between employees of which the employer neither knew nor in the exercise of reasonable care should have known. *See Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

Watkins contends that Jenkins's harassment on February 21, 2016 "furthered the racial harassment," Appellant's Br. at 18, and that, had the jury been allowed to consider the February 21 incident and subsequent investigation in assessing whether there had been sufficient racially harassing conduct to rise to the level of an actionable hostile environment, the jurors could have found that Watkins's supervisors failed to investigate sufficiently. We disagree.

Watkins failed to present a legally sufficient case to the jury because she failed show an adequate basis for imputing knowledge of Jenkins's race-based harassment to the Transit Authority. Her only evidence offered in support of the Transit Authority's knowledge prior to February 21 was the presence of instructors in the classroom near her when she heard Jenkins's insults. That was insufficient to support the inference that the instructors were aware, or should have been aware, that a severe or pervasive pattern of race-based harassment was occurring.

The harassment took place in a classroom in which there were about 11 trainees and several instructors. Watkins gave no information about what the general

7

noise conditions were at the moments when Jenkins's taunts were spoken, such as whether they occurred during classroom instruction when the room was otherwise quiet or during breaks when numerous conversations might have been going on at the same time among the approximately 15 trainees and instructors. Nor did she furnish information as to whether the instructors were engaged in other conversations at those moments. The mere fact that instructors were within earshot of what Watkins heard Jenkins say is insufficient by itself to support the inference that they actually heard or paid attention to Jenkins's words, much less that they understood those insinuations as constituting one student's race-baiting of another. None of the seven witnesses who had been present in the classroom, who could have corroborated Jenkins's racial harassment, including two classmates called by Watkins, testified to having heard Jenkins's race-based slurs. It is undisputed, furthermore, that Watkins did not inform supervisors of Jenkins's race baiting prior to the February 21 altercation.

        The February 21 incident was, on its face, race neutral. The hostile words Jenkins spoke in no way suggested that her animosity was race-based. Without prior awareness of Jenkins's earlier race-based taunts, supervisors who witnessed the overtly race-neutral February 21 altercation would have had no way of suspecting that Jenkins's aggressions might have involved race-based animosity.

        In the aggregate, Watkins's evidence was insufficient to support an essential element of her case of hostile work environment. Had the jurors been

8

permitted to consider all the details of the February 21 incident, that evidence would have added nothing to Watkins's deficient showing of employer awareness of the racial basis of Jenkins's hostility. With or without the February 21 evidence, Watkins failed to support an essential element of her case. Accordingly, even if the February 21 evidence was relevant to the question whether Jenkins subjected Watkins to a pattern of race-based hostility, its exclusion was harmless. There was no "likelihood that the [exclusion] affected the outcome of the case," *Tesser*, 370 F.3d at 319 (internal quotation marks and citation omitted), that "a substantial right . . . [was] affected," *Restivo*, 846 F.3d at 573 (internal quotation mark and citation omitted), or that the exclusion "was prejudicial in light of the charge as a whole." *Japan Airlines Co.*, 178 F.3d, at 110.

In sum, the district court did not abuse its discretion in denying Watkins's motion for a new trial.

\* \* \*

We have considered Watkins's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

9